

**Incident #: 24-614-OF**
**Call #: 24-32762**

Date/Time Reported: 08/24/2024 1750
Report Date/Time: 08/25/2024 1211
Status: No Crime Involved

Reporting Officer: Sergeant MICHAEL BOUCHER
Approving Officer: Chief CHRISTOPHER MATTEI

| # | INVOLVED | | SEX | RACE | AGE | SSN | PHONE |
|---|----------|---|-----|------|-----|-----|-------|
| 1 | PORTER, RAYMOND FRANCIS | | M | W | ██ | ████████ | ████████ |
| | KEARSARGE NH 03847 | | | | | | |

Military Active Duty: N
HEIGHT: 601        WEIGHT: 205              HAIR: BROWN      EYES: BLUE
BODY: NOT AVAIL.              COMPLEXION: NOT AVAIL.
DOB: ██████████         PLACE OF BIRTH: ████████████████
LICENSE NUMBER: ███████████        ETHNICITY: NOT HISPANIC

_____**[APPEARANCE]**_____

GLASSES WORN: NO

OCCUPATION: RETIRED

| # | EVENTS(S) |
|---|-----------|

LOCATION TYPE: Hotel/Motel/Temp. Lodgings      Zone: North Patrol
CRANMORE MOUNTAIN LODGE
859 KEARSARGE RD
N CONWAY NH 03860

**1  Disturbance**

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|
| 1 | KWOK, WILSON W | WITNESS | M | A | ██ | ████████ | ████████ |
| | N CONWAY NH 03860 | | | | | | |
| | DOB: ████████ | | | | | | |

Case 1:25-cv-00193-PB-AJ    Document 1-4    Filed 03/10/25    Page 2 of 6

On August 24, 2024, at 1526 hrs., I, Sgt. Boucher, was dispatched to the Cranmore Mountain Lodge at 859 Kearsarge Road in N. Conway for a report of a subject causing a disturbance at a wedding ceremony (CFS 24-32744). Ptl. B. Hill arrived prior to me, and when I arrived, I found Ptl. Hill speaking to a male subject in the driveway of the Cranmore Mountain Lodge. This male subject would later identify himself as

### Raymond Porter  DOB: █████████
#### Offender

I met with the manager for the lodge, who told me that Porter, whom she believes is a neighbor, was upset that there was a wedding taking place. The manager said that she has all of the permits, that she had even given the town a heads up that there would be a wedding taking place here today, and she handed me a stack of papers that appeared to be permits from the Town and NCFD. The manager said that Porter had come on to their property, was interfering with the wedding, was taking photographs of people, buildings and parked vehicles, was being argumentative and using profanities. The manager said that she told Porter to leave several times and that he refused, claiming that she wasn't the owner and couldn't tell him to leave. I could then hear Porter being argumentative with Ptl. Hill about how he did not have to leave the property when asked because the manager was not the owner of the property, and that the owners would have to be the ones to tell him to leave. I told Porter that he was incorrect, that he was now trespassed from the property, and that the manager does have the authority to do so. Porter then said that the property is open to the public, and that he is the public so how can he be be told to leave. I informed Porter that it is private property, that they can control who is allowed and who is not allowed on the property, and that he is no longer allowed on the property. Porter then began telling me that the Kearsarge Lighting Precinct's (KLP) zoning rules do not permit the Cranmore Mountain Lodge to be a wedding venue, and that everything that was going on here was illegal. I told Porter that I cannot enforce zoning rules, only state laws and town ordinances, and Porter told me that I absolutely could enforce the KLP's zoning rules because they have power through the legislature. I again told Porter that the Conway Police Department has no jurisdiction with the KLP's zoning rules, that I have no idea what those zoning rules would be anyways, and that he would have to take up the matter with the KLP. Porter expressed his surprise that I was unfamiliar with the KLP's zoning rules, and told me that he will most certainly get this all straightened out with the KLP Board on Monday. Porter asked me what I was going to do about the wedding then, and I told him I was going to do nothing about there being a wedding, and he continued to tell me how it was not permitted. I told Porter that I was not stopping a wedding from taking place, and again referred him to the KLP Board. Porter said that there was all sorts of noise from the wedding party last night, and asked me what I was going to do about it. I asked Porter if he called the PD and reported the noise disturbance last night when it was happening, and he said that he didn't. Porter then asked me what I was going to do about all of the vehicles parked on the sides of Kearsarge Road, and I told him that they all appeared to be parked legally and were not hazards. I saw vehicles parked only on one side of Kearsarge Road, and all were off of the pavement. Porter told me that per the KLP's zoning rules, no vehicles were allowed to be parked in front of the Cranmore Mountain Lodge, and I again told him that unless the parked vehicles were in a no parking zone, were a hazard, or were on someone else's property and the property owner didn't want them there, there was nothing that I could do about them. Porter then pointed out two vehicles that he claimed were parked on someone else's property. I asked Porter if he was the owner of the property, and he told me he wasn't, so I told him that unless the actual property owner informed the PD that they wanted the vehicles removed, there was nothing that I could do about them. Porter continued to tell me how the owners of the property were in complete violation of zoning rules, and that the wedding could not continue. It was clear that no more progress was going to be made with our conversation, as Porter continued to say the same things to me over and over again, despite me repeatedly informing him that he would need to take up the alleged zoning issues with the KLP Board. Porter,

who was still in the driveway of the lodge, was then told to get off of the property, especially as wedding guests were arriving, and were trying to pull into the driveway. The owners of the lodge then arrived, and also told Porter to get off of the property and that they wanted him trespassed. Porter then became petty, and said that he would stand on the side of the road in front of the lodge. I asked Porter what he felt he was accomplishing by standing in front of the lodge, since he made it clear to us that he already had video and photographic evidence on his cell phone of the wedding taking place, and he said that he can walk alongside Kearsarge Road if he chooses to. I told Porter that he can walk along Kearsarge Road, but that he would have to walk on the opposite side of the road so that he wouldn't be violating the criminal trespass order, as the lodge's property extends to the edge of the pavement. Porter told me that he can absolutely walk where I just told him that he couldn't, as there is a public right-of-way that extends so far out from the center line of Kearsarge Road. I told Porter that he was correct about there being a public right-of-way, but informed him that it was for public utilities, such as sewer, water, electricity, town plowing and road drainage, and not for him to use at his leisure. Porter began arguing with me, and I told him that if walked on the lodge's side of the road that he would be arrested for trespassing. Porter asked me how he was then supposed to walk to his friend's house up the road, and I again told him to walk along the other side of the road. Porter then said that he didn't want to cross the road, and would just walk on the pavement instead. I told Porter that if obstructed traffic by walking on the pavement, that he would be arrested for Disorderly Conduct or cited for pedestrian violations. Porter was asked to stop playing games with us, to just get off of the property, and take up his zoning issues with the KLP. Porter then began asking where he could stand, and moved around asking us if here and there was OK. I told Porter to leave now, pointing in the direction of the neighboring property or that he was going to be arrested. Porter finally complied, and left the property at around 1604 hrs., nearly a half an hour after Ptl. Hill began speaking with him. I remained at the property speaking with the owner,

**Wilson Kwok  DOB:** 
Witness

who told me that Porter has it out for them, and is doing everything he can to stop them from operating their business. Kwok said that they bought the property three years ago, and have since had hearings with the KLP about what they can and can't use the property for. Kwok said that were told that they could no longer use the barn on the property for gatherings, and that they filed an appeal with the zoning board, but lost their appeal. Kwok said that as a result, they have to put up large tents outside for gatherings, which they have complied with. Kwok said that they are trying to do everything correct, but Porter always seems to take issue with everything they do. Kwok said that he and his wife were going to remain on the property this evening, to keep an eye on things, and just in case Porter comes back to interrupt the wedding again.

   At 1750 hrs., Porter called the station (CFS 24-32762) and according to the dispatch log, it was to report partying, loud music, and general noise disturbance, claiming that it had been going on for three hours. I was not able to get to Porter's residence until 1841 hrs., due to having to handle a priority call. I also knew the noise hadn't been going on for three hours, as I had still been at the Cranmore Mountain lodge an hour and a half earlier and it had been all quiet. Porter lives on Old Bartlett Road, on the corner of Crown Ridge Road. I first stopped on Old Bartlett Road by the end of Porter's driveway, and could hear some music in the distance, which sounded to be the wedding party taking place. I also could hear equally loud music coming from the residence at 538 Old Bartlett Road, directly across from Porter's residence at 539 Old Bartlett Road. None of the music that I could hear was unreasonable. I then drove a short ways up Crown Ridge Road, to where the Cranmore Mountain Lodge's property comes closest to, and through the woods I could see and hear the wedding party taking place. I could hear music from what sounded to be a DJ, and I could hear what sounded to be the DJ making typical wedding party announcements over a microphone. Although louder from what it was compared

Case 1:25-cv-00191-PB-AJ   Document 14   Filed 03/10/25   Page 4 of 6

to the area in front of Porter's residence, I still did not find the noise to be unreasonable for the time of day. While stopped on Crown Ridge Road, about 260 yards away from Porter's residence, Porter came walking up to me from his residence.  Porter was acting surprised about hearing the wedding party going on.  Porter again began telling me that the owners of the Cranmore Mountain Lodge know what they're doing is wrong, and that they had lost their appeal to the zoning board, because he is on the KLP's Board of Directors, and he ran the hearing where they lost their appeal.  Porter again began complaining of the illegal wedding taking place, the illegal parking of cars, and how everyone is complaining about the noise, despite the PD only getting one call about the noise, and that being from Porter.  Porter was obviously mad about the alleged zoning rules being violated, and him complaining about the noise appeared to be just the result of me not shutting the wedding down.  I told Porter that I did not find the noise to be unreasonable, and that I was still not putting an end to the wedding.  Porter then showed me a video he had taken of the wedding party, which was pretty much the same thing that I was seeing live from the side of Crown Ridge Road, except that the volume on his phone was on full blast, and it made the party sound louder that it actually was.  Porter claimed the video was taken from his back patio, but it appeared to me that it had been taken from nearly the same vantage point that I was currently standing at, based on the grassless tree line, and vantage point of the party.  Porter's back yard is luscious grass, and I even pointed this out to Porter, but he continued to maintain that it had been taken from his back patio. Porter then played another video, claiming that he had recorded that from the Village of Kearsarge, and how the music was excessive and bothering everyone in that area of Kearsarge as well.  Again, no one else called the PD about the noise or the wedding, except for Porter's one phone call, and Porter's main complaint was that the wedding was taking place in violation of KLP rules, rather than the noise it was producing.  Porter then told me that he was going to call 'Chris Mattei,' and I told him that he could if he wanted to.  Porter again said that he was going to call 'Chris Mattei' and that he was just letting me know right now.  I again spent time explaining things to Porter, about what my authority is, the times of the town's noise ordinance, and about how the noise level comes down to what is reasonable versus what is unreasonable, and how I did not find at this time the music to be unreasonable.  I did tell Porter that I would go and speak with the owners, make them aware of his complaint, and ask them if they wouldn't mind turning the music down a bit.  I left Porter's residence at 1853 hrs..

I then returned to the Cranmore Mountain Inn, and found Kwok still at the end of the driveway in his vehicle.  The music was not very loud here, as it is uphill and behind a building from where the party was.  It was certainly louder at Porter's residence, as his property is lower and in a valley along a brook.  I made Kwok aware of the noise complaint, and asked him if he could ask the DJ to turn down the volume just a little bit. Kwok said that he would.  I also reccommended to Kwok to drive up Crown Ridge Road, so that he could see for himself how the noise, although not unreasonable at that time, seemed to be carrying and how it was louder in that valley area near Porter's residence.  Kwok said that he would, but was still fearful that Porter would return to the property and disrupt the wedding party.

At 1937 hrs., I was again dispatched back to Porter's residence for him complaining about the wedding noise (CFS 24-32771), and who believed I had never gone and spoken with the owners like I said I would.  I arrived around 1952 hrs., and again met with Porter.  Porter told me that the music never got turned down, and if anything they turned it up louder.  I told Porter I did go and speak with the owners like I said I would, and had asked them to turn the music down, although I again did not find it to be unreasonable earlier.  I could not tell now if the music had been turned down at all, but the music certainly did not appear to be any louder than it was earlier.  With it now being dark out, with less vehicle traffic passing, and less general daytime noise, I did think at 1952 hrs. that the volume of the music was on the verge of being unreasonable from Porter's back yard. I asked Porter what it sounded like inside of his house, and he invited me inside.  Most of Porter's windows were open, as was his sliding glass porch door, so the music could be heard inside of his house, although slightly lower than the level heard outside.  Porter said that he didn't think that he should have to close all of his

Case 1:25-cv-00191-DB-AJ   Document 1-4   Filed 03/10/25   Page 5 of 6

windows and doors, and turn on the air conditioner to drown out the noise, and I told him that he certainly didn't have to, but he could if he didn't want to listen to the wedding festivities for the next hour and a half.  I told Porter that I would go back to the lodge and have them turn down the music, but I told him that he would likely still hear it from his house, just at a more reasonable level.  I again informed Porter about the 10PM noise ordinance, and he told me that he would most certainly be calling at 10PM.  I told Porter to only call if the music was still playing, and that any other noise, such as guests talking, or making other noises would be dealt with on a case by case basis, and it would again come down to what is reasonable and what is not.  I told Porter that the 10PM noise ordinance doesn't mean that it has to be completely silent on the property.  Porter told me that he doesn't want any of the wedding guests to get in trouble, as it is not their fault that the lodge hosted an illegal wedding party, but that he wanted me to hold the owners accountable for their actions.  Porter asked me what would happen after 10PM if there was still noise, and I explained again that it is a case by case situation, but that typically a verbal warning is first issued to the offender, and then a town ordinance violation citation if the noise continues, and then up to and including an arrest for Disorderly Conduct if neccessary.  Porter again told me that he does not want the guests punished, but that the owners should be given the citation or be arrested.  Porter then again mentioned how the owners are in violation of KLP's zoning rules, and how it will be dealt with Monday.  Porter continued to say that everyone in the neighboring is complaining about the noise, yet again, his two phone calls to dispatch had been the only complaints received.  Porter asked me if I was going to be writing a report on this, because now that I've been there three times, it seems like it's getting out of control.  Again, the first time I dealt with Porter it was for him trespassing at the Cranmore Mountain Lodge, the second time for his noise complaint where the noise was found to be reasonable, and now this time for his noise complaint that was going to be addressed.  Porter also said that he's sure that there's alcoholic beverages being served there and said that there's no way that they have a liquor license to do that.  I told Porter that I have no idea whether they have a liquor license or not, or whether they need one or not.  Porter asked me if the NH Liquor Commission handles that, and I told him that they probably do.  Porter again referenced the cars being parked on the side of the road and how Kwok had told the KLP Board that cars would never be parked on the side of the road, yet here he is allowing cars to park on the side of the road.  Porter told me that the Murphy's around the corner hold a big party during the year, and that they invite the whole neighborhood over, but he doesn't attend.  Porter said that they have quite the party, with lots of people, music and noise, but that he's totally OK with it because they live here year round.

I left Porter's residence at 2011 hrs. and went back to the Cranmore Mountain Lodge, again finding Kwok still to be in his car at the end of the driveway.  I made Kwok aware of Porter's noise complaint, and how this time I do believe the noise is reaching the point of being unreasonable.  Kwok then had the manager go and have the DJ turn down the volume.  While speaking with Kwok, at 2023 hrs., Porter again called the station (CFS 24-32776), but just to inquire when the noise level becomes unreasonable.  Dispatch referred him to me, and told him that I was still at the Cranmore Mountain Lodge if he wanted to speak with me.  Kwok was very reasonable and asked me what to do in the future, as they have around twenty weddings planned.  I recommended to Kwok to get things figured out with the KLP, as I'm willing to bet that Porter is going to take the issue up with them, and if he's OK to continue hosting weddings and wedding party's, than to keep doing so, but to just be mindful of keeping any associated noise reasonable.  I asked Kwok if he had driven up Crown Ridge Road earlier to see for himself how the music was travelled, and he said that he did.

At 2158 hrs., Porter again called the station, and according to the dispatch log (CFS 24-32783), he wanted to make a formal complaint, wanted someone arrested, and wanted to send a message to Chris Mattei.  Dispatch informed him that they would send an officer and then transferred him to Chief Mattei's voicemail.  I was now off duty, so Ptl. Kessler and Ptl. McKay responded to the noise complaint and discovered no noise.  After meeting with Porter, he said that the music had stopped right after he called, which appears to be around 2200 hrs., which would be in compliance with the Town's noise ordinance.  Again, no one other than Porter

Case 1:25-cv-00191-PB-AJ   Document 1-4   Filed 03/10/25   Page 6 of 6

called about the wedding's noise, and out of his three noise complaints, the first was found to be reasonable noise, the second was on the verge of being unreasonable, and upon the officer's arriving for the third complaint, no noise was observed.  Nothing further at this time.

**\*\* Portions of this report have been redacted \*\***